Ryan L. Frei, OSB #192660
ryan.frei@klarquist.com
Scott E. Davis OSB #022883
scott.davis@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300

*Counsel for Plaintiff*
*SAWSTOP HOLDING LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SAWSTOP HOLDING LLC**, an Oregon LLC, | Case No. 3:24-cv-00796-AN |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | **Oral Argument Requested** |
| **FELDER KG,** a foreign company, | |
| Defendant. | |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND .................................................................................................4

      A.    SawStop .................................................................................................4

      B.    Felder KG .................................................................................................5

      C.    Other Proceedings Between the Parties .................................................6

III.  ARGUMENT .................................................................................................7

      A.    Felder Was Properly Served .................................................................7

            1.    Service Was Proper Because Ruan du Toit and
                  Felder Group USA are Felder's General Agents in the U.S. .....................7

            2.    Service Is Also Proper Under Oregon State Law .....................................10

            3.    If Service Is Not Deemed to Have
                  Been Proper, SawStop Requests that the Court Allow
                  Service on Felder's Attorneys Under Fed. R. Civ. P. 4(f)(3) .................11

      B.    SawStop Adequately Pleads Personal Jurisdiction Over Felder KG .................12

            1.    Felder Relies on Non-Controlling Legal Authorities
                  and an Incomplete Recitation of the Governing Standards .....................13

            2.    SawStop Adequately Pleads
                  Personal Jurisdiction Based on "Minimum Contacts"
                  with the Forum Even Under the Plausibility Standard ...........................16

            3.    Jurisdiction Is Also Proper Under the
                  Federal Long-Arm Statute, Fed. R. Civ. P. 4(k)(2) .................................22

            4.    The Court Should Grant
                  Jurisdictional Discovery if It Finds the Record
                  Is Not Developed Enough to Determine Personal Jurisdiction .................26

      C.    The Complaint Adequately Pleads Patent Infringement Claims .........................27

            1.    SawStop Adequately Pleads Direct Infringement .....................................27

            2.    SawStop Adequately Pleads Induced Infringement .................................28

3.    SawStop Adequately Pleads Willful Infringement ................................... 31

4.    SawStop Adequately Pleads Its Claims Under 35 U.S.C. § 287 ............. 32

IV.    CONCLUSION ............................................................................................... 32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................... 13, 16, 28, 29

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 13, 16, 28, 29

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
  21 F.3d 1558 (Fed. Cir. 1994) ........................................................................15

*Bot M8 LLC v. Sony Corp. of Am.,*
  4 F.4th 1342 (Fed. Cir. 2021) ........................................................................28

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ........................................................................15

*Butcher's Union Loc. No. 498 v. SDC Inv., Inc.,*
  788 F.2d 535 (9th Cir. 1986) ........................................................................26

*Cardsoft, Inc. v. Verifone Holdings, Inc.,*
  2009 WL 361069 (E.D. Tex. Feb. 10, 2009) ........................................................19

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
  807 F.3d 1283 (Fed. Cir. 2015) ........................................................................17

*Celgard, LLC v. SK Innovation Co.,*
  792 F.3d 1373 (Fed. Cir. 2015) ........................................................... 14, 17, 18

*Chan v. Soc'y Expeditions, Inc.,*
  39 F.3d 1398 (9th Cir. 1994) ........................................................................8, 9

*Clark v. Podesta,*
  2015 WL 5721796 (D. Idaho Sept. 14, 2015) ........................................................13

*Disc Disease Sols. Inc. v. VGH Sols., Inc.,*
  888 F.3d 1256 (Fed. Cir. 2018) ........................................................................27

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.,*
  2023 WL 7214672 (D. Del. Nov. 2, 2023) ........................................................31

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
  514 F.3d 1063 (10th Cir. 2008) ........................................................................14

*Dunlap v. Schofield,*
    152 U.S. 244 (1894) ................................................................................32

*Elecs. for Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003) ..............................................................15

*Epistar Corp. v. Lowes Cos., Inc.,*
    2018 WL 6118577 (C.D. Cal. Feb. 26, 2018) ................................9, 10

*Hackett v. Red Guahan Bus,*
    2016 WL 1445212 (D. Haw. Mar. 22, 2016) ..........................................14

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.,*
    775 F. Supp. 2d 790 (D. Md. 2011) ........................................................14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
    579 U.S. 93 (2016) ..................................................................................31

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
    831 F.3d 1369 (Fed. Cir. 2016) ..............................................................17

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012) ........................................................29, 30

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001) ..............................................................15

*Laub v. U.S. Dep't of Interior,*
    342 F.3d 1080 (9th Cir. 2003) ..........................................................26, 27

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
    869 F.3d 1372 (Fed. Cir. 2017) ..............................................................29

*Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC,*
    2021 WL 3856145 (D. Del. Aug. 27, 2021) ..........................................30

*Martinez v. Agoda Co. Pte. Ltd.,*
    2023 WL 2254550 (S.D. Cal. Feb. 27, 2023) ........................................14

*Memory Integrity, LLC v. Intel Corp.,*
    144 F. Supp. 3d 1185 (D. Or. 2015) .......................................................29

*Merial Ltd. v. Cipla Ltd.,*
    681 F.3d 1283 (Fed. Cir. 2012) ........................................................22, 23

*Metricolor LLC v. L'Oreal S.A.,*
    791 F. App'x 183 (Fed. Cir. 2019) .........................................................19

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
890 F.3d 995 (Fed. Cir. 2018) .................................................................................22, 25

*Microsoft Corp. v. Buy More, Inc.*,
703 F. App'x 476 (9th Cir. 2017) .......................................................................11

*Mitutoyo Corp. v. Cent. Purchasing, LLC*,
499 F.3d 1284 (Fed. Cir. 2007)..........................................................................31

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .............................................................................33

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)..........................................................................30

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)..........................................................................26

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016)........................................................... 13, 15, 16, 24

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ...........................................................................11

*Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*,
575 F. App'x 710 (9th Cir. 2014) .......................................................................10

*Sec. First Innovations, LLC v. Google LLC*,
2023 WL 7726389 (E.D. Va. Nov. 15, 2023).......................................................31

*Sentry Prot. Prod., Inc. v. Eagle Mfg. Co.*,
400 F.3d 910 (Fed. Cir. 2005) ...........................................................................32

*Sheets v. Admin. Comm. of Northrop Grumman Space & Mission Sys. Corp. Salaried Pension Plan*,
2023 WL 2761118 (C.D. Cal. Mar. 31, 2023).......................................................14

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022)..................................................... 30, 31, 32

*Superior Indus., LLC v. Thor Glob. Enters., Ltd.*,
700 F.3d 1287 (Fed. Cir. 2012)..........................................................................29

*Syngenta Crop Prot., LLC v. Willowood, LLC*,
944 F.3d 1344 (Fed. Cir. 2019)..........................................................................17

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
563 F.3d 1285 (Fed. Cir. 2009)..........................................................................22

*Touchcom, Inc. v. Bereskin & Parr,*
   574 F.3d 1403 (Fed. Cir. 2009) .......................................................................23

*Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.,*
   2010 WL 845927 (D. Colo. Mar. 9, 2010) ......................................................13

*U.S. ex rel. Thomas v. Siemens AG,*
   708 F. Supp. 2d 505 (E.D. Pa. 2010) .............................................................10

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
   486 U.S. 694 (1988) ........................................................................................10

*Wells Fargo & Co. v. Wells Fargo Exp. Co.,*
   556 F.2d 406 (9th Cir. 1977) ........................................................................7, 8

**Statutes**

35 U.S.C. § 271 .............................................................................................. 17, 21, 23

35 U.S.C. § 287 .................................................................................................. 3, 32, 33

**Rules**

Fed. R. Civ. P. 4 ....................................................................................................passim

Fed. R. Civ. P. 10 ........................................................................................................28

Fed. R. Civ. P. 12 .......................................................................................... 13, 31, 33

O.R.C.P. 7 ............................................................................................................. 10, 11

## I.    __INTRODUCTION__

In this patent infringement suit, Defendant Felder KG ("Felder") admits that its U.S. subsidiary has sold the infringing saws in the U.S. And Felder does not deny that its wholly owned subsidiary has sold the infringing saws in Oregon. The close relationship between these entities, and the evidence showing contacts with Oregon and the U.S., rebuts Felder's claims of improper service and no personal jurisdiction. Beyond satisfying those threshold requirements, SawStop has also adequately stated a claim for relief.

Felder and its U.S. subsidiary, ASW Machinery, Inc. ("ASW"), are closely entwined,[1] and service on the CEO of ASW effected service on Felder. Felder's declaration in support of its Motion reflects this entwinement, because the declarant testifies to being both Felder's Regional Manager of Sales and President of ASW. ECF No. 9 ("Lux Decl."), ¶¶ 1, 13. In a separate trademark dispute between the parties, the record also shows that ASW works hand-in-glove with its Austrian parent. In the Trademark Trial and Appeal Board (TTAB) trial, Felder did not bother to send someone from the Austrian parent company to testify and instead had ASW's CEO testify: Mr. Ruan du Toit. Because Mr. du Toit is the face of Felder in the U.S., Tualatin-based Plaintiff SawStop Holding, LLC served him with the Complaint in this suit personally under Rule 4(h)(1)(B) as the general agent of Felder in the U.S. Service is also proper under the Oregon service statute, because that service was "reasonably calculated" to put Felder on notice. Even so, if the Court finds the prior service insufficient, SawStop asks that the Court authorize SawStop under Rule 4(f)(3) to serve Felder's attorneys who have already appeared here.

---

[1] These entities are referred to by different names both in the supporting evidence and in this brief. Defendant Felder KG is understood to be the parent company and is also referred to as "Felder" or "Felder Group." Felder refers to ASW as "Felder USA" (*see* Lux Decl., ¶ 13) or "Felder Group USA." Unless otherwise noted, SawStop's references herein to "Felder" mean Defendant Felder KG.

Felder also alleges that there is no personal jurisdiction over it in Oregon, but SawStop pleads the required prima facie case for personal jurisdiction in Oregon, as discussed below. Beyond that, Felder appears to argue that it has no minimum contacts with any state's courts of general jurisdiction, which if taken as true gives rise to jurisdiction under Rule 4(k)(2).

But Felder's apparent position that it has no U.S. contacts is not credible in view of the evidence uncovered to date showing Felder's control over the U.S. business. Felder admits that its wholly owned U.S. subsidiary sells the infringing saws in the U.S. Lux Decl., ¶ 21. And ASW and its CEO act as agents of Felder in interactions with U.S. officials, such as when Mr. du Toit sent a letter to the U.S. Consumer Product Safety Commission "on behalf of Felder KG." Ex. 2.[2] Felder also prepared a press release for the infringing saws in the name of Felder Group USA, seamlessly blending information about the two entities as shown below. Ex.1, 133:2–24.



Ex. 27 (Ex. 8 to 2022 du Toit deposition; excerpted and annotations added in green).

---

[2] Exhibits cited herein are attached to the Declaration of Martine G. Kivatinetz filed concurrently herewith, unless otherwise indicated.

Felder even controls the Felder Group USA social media presence, and has made posts about the infringing saws, such as the post below. *Id.*, 175:8–176:11.



Ex. 28 (Ex. 15 to 2022 du Toit deposition).

Ample evidence shows Felder controlling Felder USA, and Felder USA acting on behalf of Felder, to support both personal jurisdiction and that service on the CEO of Felder USA was proper as service on Felder's agent. Moreover, as will be discussed, the Lux Declaration that Felder recently crafted supports a finding that service and personal jurisdiction are proper, despite also contradicting prior statements and sworn testimony.

Finally, Felder alleges that SawStop does not adequately plead its claims of infringement. But Felder's Rule 12(b)(6) grounds largely fail to accurately state the controlling case law and do not properly apply it when they do. SawStop has sufficiently pled direct, induced, and willful patent infringement and has met the requirements of 35 U.S.C. § 287. The relevant inquiry at this phase of the case is not a preponderance of the evidence, but whether SawStop's pleading is sufficient to raise a plausible claim. SawStop's Complaint meets that standard.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS            3

## II.    BACKGROUND

### A.    SawStop

The National Electronic Injury Surveillance System estimates that there are about 30,000 table saw injuries in the U.S. every year due to the use of bench or table saws. Ex. 3. SawStop's founders recognized this problem and developed a technology that all but eliminates these amputations. It built a business out of its Tualatin headquarters around the demand for safer table saws that use that technology.

SawStop's saws send a small electrical signal to the saw blade (Ex. 4), and because the human body is conductive, the properties of that electrical signal change when the blade touches someone's body. *Id.* When the saw detects a change characteristic of contact, an aluminum brake springs into the path of the blade, as shown in the image below. *Id.* After the blade stops, its momentum drives it beneath the level of the table, removing the risk of any subsequent contact. *Id.* SawStop sells several saw models, but one of its most popular is the Professional Cabinet Saw, which it has marketed as the PCS™ saw since 2009. Ex. 5, ¶¶ 2–3. The PCS™ saw is shown below left, with a photograph of the SawStop braking system shown below right:



Exs. 6, 7.[3]

---

[3] *See also* https://www.sawstop.com/wp-content/uploads/2021/11/UnderTableActivationCloseShot10InchBlade.mp4 (last visited June 24, 2024) (showing slow motion video of the braking system in action).

B.    **Felder KG**

Felder is an Austrian company whose website claims operations in 84 countries (Ex. 29) and claims to have "over 270 sales and service centres worldwide." Ex. 8. Felder also has a long history in the U.S. power tool market. In 1998, Felder formed ASW Machinery, Inc. as its U.S. subsidiary. Ex. 9. ASW is wholly owned by Felder KG and does business under the name "Felder USA." Lux Decl., ¶ 13.

In 2019, Felder began selling saws like the one shown below left that stop the blade and drop the blade under the table, in a way that is very similar to SawStop's saws. Felder illustrates its system as depicted in the annotated photograph shown below right.



Ex. 10 at 2; Ex. 11, 8:23–9:14. Felder's subsidiary ASW has sold those saws in the U.S. since 2020. *Id.*, 11:3–13. When Felder introduced these saws, Felder began selling them as "PCS"—the same brand that SawStop had long used for its Professional Cabinet Saws. *Id.,* 8:23–9:14. Felder claims that "PCS" is short for "Preventive Contact System." *Id*. Felder began registering the term "PCS" as a trademark by 2018 and has sought registrations in countries around the world, attempting to prevent others from using the term to market their saws. Ex. 12.

### C.    <u>Other Proceedings Between the Parties</u>

This suit is not the parties' first encounter. In 2019, Felder applied to register "PCS" as a trademark in the U.S., and SawStop filed to oppose that application at the TTAB in May 2020. That dispute is ongoing.

In that TTAB opposition proceeding, Ruan du Toit, the CEO of Felder's subsidiary ASW, is the sole person Felder identifies as having relevant information. Ex. 13, I.A.1. He has been deposed twice in that dispute. In his depositions, Mr. du Toit described himself as the person most knowledgeable about Felder's plans to use the "PCS" mark in the U.S.—"PCS" is the acronym for the "Preventive Contact System" that infringes SawStop's patents here. Ex. 1, 60:16–20. He is the only person Felder identified at the TTAB as having its discoverable information (Ex. 13, I.A.1), the only person it identified as providing testimony for it (Ex. 14, Def.'s Resp. to Pl.'s Interrog. No. 4), and the only person identified as having prepared Felder KG's interrogatory responses (Ex. 14, Def.'s Resp. to Pl.'s Interrog. No. 7).

While the factual record provided by Felder here consists only of a single declaration from Felder's sales manager, the record in the parties' dispute at the TTAB is more developed. The TTAB record raises questions about the basis for some of Felder's statements in its declaration. For example, Felder asserts here that "Felder KG does not sell, within the United States, any power equipment with the 'Preventive Contact System.'" Lux Decl., ¶ 21. Yet before the TTAB, Felder stated that "Applicant [Felder KG] has sold systems comprising saws in the U.S. under the mark PCS." Ex. 14, Def.'s Resp. to Pl.'s Interrog. Nos. 28–29. Here Felder's declarant also claims that "Felder KG and ASW do not pay wages to each other's employees," (Lux Decl., ¶ 19), even though the declarant himself is both an employee of Felder (Lux Decl., ¶ 1) and President of ASW (Lux Decl., ¶ 13). Here, Felder's declarant states that "Felder KG does not exercise authority over ASW's policies" (Lux Decl., ¶ 15), even while ASW's CEO testified that it was Felder—a

privately held company owned by the two Felder brothers—that formed and fully owns ASW (Ex. 1, 45:19–20 ("Q: Was ASW Machinery formed by Felder KG? A: Correct.")) and appointed its CEO. *Id.*, 37:1–17; *see also* Ex. 1, 44:25–45:18. Felder also asserts that it and ASW "maintain separate accounting systems" (Lux Decl., ¶ 16), while ASW's CEO testified that ASW cannot even edit its own invoices because they are generated within Felder KG's systems. Ex. 1, 141:1–142:25.

### III.   ARGUMENT

#### A.   Felder Was Properly Served

##### 1.   Service Was Proper Because Ruan du Toit and Felder Group USA are Felder's General Agents in the U.S.

Felder was properly served under Fed. R. Civ. P. 4(h)(1)(B) because Ruan du Toit is Felder's general agent in the U.S. That rule provides for service of a "domestic or foreign corporation . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent . . . ."

To be the general agent for purposes of service, one must "perform duties which are 'sufficiently necessary' to the corporation's operations. He should be 'a responsible party in charge of any substantial phase' of the corporation's activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 423 (9th Cir. 1977).

Mr. du Toit has been acting on Felder's behalf since he was hired as a sales manager and then was appointed CEO of Felder's wholly owned subsidiary, ASW, in 2012. Ex. 1, 36:16–20 and 37:4–17. Mr. du Toit is the person who knows the most about Felder's "use and plans to use the mark PCS in the United States" (*id.*, 60:16–20), and the PCS mark is used on the infringing saws (*see, e.g.*, ECF No. 1, ¶ 8). He has "supervised all the activities in the United States"

throughout his tenure as CEO. Ex. 11, 50:5–12. And to facilitate his role as the agent in the U.S., Mr. du Toit has an assistant in Austria. Ex. 1, 16:4–16. Mr. du Toit has also acted as Felder's agent in official proceedings before the U.S. Consumer Product Safety Commission, signing the letter "on behalf of Felder KG, Austria," as shown below.



**FELDER GROUP USA**
USA Headquarters
2 Iukers Drive, Suite 300
New Castle, DE 19720
Tel. 866-792-5288, Fax 302-322-9865
sales-us@felder-group.com, www.feldergroupusa.com

**FELDER** *FORMAT4* **Hammer MAYER**

14 November 2023

Commissioner Peter A. Feldman
Consumer Product safety Commission
4330 East West Highway
Bethesda, MD 20814

<u>**RE: AIM Technology and IP of blade safety systems.**</u>

. . .

With kind regards

Ruan du Toit
CEO – Felder Group USA

On behalf of Felder KG, Austria.

Ex. 2 (excerpts from letter signed by Mr. du Toit; red annotation added).

Beyond Mr. du Toit acting as a general agent, ASW also acts as Felder's agent in the U.S., carrying out essentially all of Felder's activities in the U.S. under du Toit's direction. The Ninth Circuit has endorsed the use of Rule 4(h)(1)(B) for service of subsidiaries of foreign entities, holding that where "substantial activities" are "carried on for the benefit of the principal" by a subsidiary, the subsidiary may act as a general agent for their foreign parent company. *Wells Fargo*, 556 F.2d at 423; *see also Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir.

1994) ("Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint.").

The Declaration of Arthur Lux that Felder submitted and the prior testimony of Ruan du Toit demonstrate how close the relationship is between parent and subsidiary and the substantial activities that ASW carries out for Felder's benefit. Felder USA aka "ASW is a wholly owned subsidiary of Felder KG." Lux Decl., ¶ 13. Mr. Lux is both Regional Sales Manager of Felder KG and President of ASW. Lux Decl., ¶¶ 1, 13. Felder alleges that ASW makes all of Felder KG's sales in the U.S. ECF 9, ¶ 21. Mr. du Toit has stated that ASW is the exclusive distributor for Felder KG in the U.S. (Ex. 1, 46:6–11), and that the quotes and orders for those sales are done within the Felder KG system (*id*., 141:6–15 ("[W]hen we prepare quotes, order confirmations, things like that, it is the Felder KG system that we [at ASW] work within and that leads to whatever the printed order confirmation is or someone that you might see.")). Felder holds itself out as Felder Group and Felder USA. *Id*., 133:2–24 (discussing a Felder prepared press release for the infringing saw system in the name of Felder Group USA). Felder USA does not have its own website, instead the "main company website" is directed to the U.S. *Id.*, 52:24–53:10; Ex. 30 (Ex. 3 to 2022 du Toit deposition); Kivatinetz Decl., ¶ 3.

Because Mr. du Toit and his company, ASW, perform the duties of running Felder's operations in the U.S., they are both general agents of Felder KG, and Felder's string cites of case law do not dictate otherwise.[4] Thus, service on Mr. du Toit—both on him as an individual and as CEO of Felder's agent ASW—was proper service on Felder.

---

[4] Felder cites two cases relating to service on an agent, but both are distinguishable. First, in *Epistar Corp. v. Lowes Cos., Inc.*, No. CV-17-3219-JAK (KSX), 2018 WL 6118577, at *2 (C.D. Cal. Feb. 26, 2018), the Plaintiff failed to make any evidentiary showing of agency. Instead, it relied only on a screenshot that they claimed "represents to the public that they [defendant] are a single

## 2.    Service Is Also Proper Under Oregon State Law

Service on Mr. du Toit is also proper under Fed. R. Civ. P. 4(e)(1) because O.R.C.P. 7D(1) allows for service that is "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action." Here, SawStop served the agent directing Felder's activities in the U.S. Mr. du Toit is the person most knowledgeable about Felder's activities in the U.S. and has testified that he has a designated assistant at Felder. Ex. 1, 16:4–17:18; Ex. 13. In view of Mr. du Toit's direct line of communication with Felder, SawStop's service method thus was reasonably calculated to apprise Felder of this action and did in fact apprise Felder of this action. Thus, the Court should deem service proper under Fed. R. Civ. P. 4(e)(1) as well.

The Ninth Circuit has upheld service on a foreign company under O.R.C.P. 7D(1) on remarkably similar facts where the domestic subsidiary that was served was 95% owned by the foreign company and a letter to the U.S. EPA represented the subsidiary to be acting as an agent for the foreign company. *See Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 575 F. App'x 710, 712–13 (9th Cir. 2014) (unpublished) (affirming service on

---

enterprise with Zhejiang Yankon [the U.S. subsidiary]," but the Court found that the website made no such representation. *Id*. Here, SawStop has identified numerous ways that Mr. du Toit and ASW act as agents for Felder. Second, Felder cites a case applying Third Circuit law to find that a U.S. subsidiary was not an agent. But in that case, the defendant had a number of subsidiaries operating in the U.S., and the parent corporation had not "made any statements or gave any direction to SMS about the equipment's pricing or the preparation of bids." *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 520 (E.D. Pa. 2010). Here, in contrast, ASW is the sole U.S. subsidiary and Felder is the entity offering to provide quotes and preparing invoices, as discussed above. And here there is evidence of Mr. du Toit and ASW actually acting as agents for Felder. *See, e.g.*, Ex. 2.

Felder's other case law addresses a different question: whether service on a subsidiary is sufficient to effect service on a parent entity outside the agency relationship. That case law it cites is not relevant to whether service on Mr. du Toit or ASW is sufficient under Rule 4(h)(1)(B). Neither does such service on a general agent run afoul of the Hague Convention, because "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the [Hague] Convention has no further implications." *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988).

subsidiary properly effected service on foreign company under O.R.C.P. 7D(1)). Here, service was effected on the CEO of Felder's wholly owned subsidiary ASW, and ASW (Felder Group USA) represented itself to be acting as an agent for Felder before the U.S. Consumer Product Safety Commission by signing a letter "on behalf of Felder KG, Austria." *See* Ex. 2; Lux Decl., ¶ 13; Aff. of Service (ECF No. 7).

> ### 3.    If Service Is Not Deemed to Have Been Proper, SawStop Requests that the Court Allow Service on Felder's Attorneys Under Fed. R. Civ. P. 4(f)(3)

In the alternative, SawStop asks that if the Court does not find service sufficient under Fed. R. Civ. P. 4(h)(1)(B) and 4(e)(1), that the Court allow service on Felder's counsel appearing in this suit under Fed. R. Civ. P. 4(f)(3). The Ninth Circuit has "commit[ted] to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). "Due process requires that the selected means of alternative service of process be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x 476, 480 (9th Cir. 2017) (internal citations omitted).

Here, there is no need for additional notice to apprise Felder of the pendency of this action because Felder is already defending itself in this suit. Where Felder has already appeared in this suit, requiring formal service under the Hague convention would only delay the resolution of this dispute.

Thus, SawStop requests that the Court, in the alternative, authorize alternative service on Felder's attorneys of record.

**B.    <u>SawStop Adequately Pleads Personal Jurisdiction Over Felder KG</u>**

SawStop has satisfied the prima facie showing of "minimum contacts" with Oregon, which is all that is required at this early stage. As Felder acknowledges, Oregon's long-arm statute is coextensive with due process (ECF No. 8 at 16), so the only part of the specific jurisdiction test at issue is whether there are sufficient "minimum contacts" to satisfy due process.

SawStop's Complaint alleges that Felder has sold the infringing saws *throughout the U.S.* and has specifically targeted Oregon through advertising and mailing brochures featuring the infringing saws to addresses in the District of Oregon. ECF No. 1, ¶¶ 7–9. For example, Felder sent a brochure from Europe to an address in Tualatin that features the infringing saws, was signed by the Felder KG CEOs (below left), and is marked with a Felder KG copyright notice (below right):



Martin Felder & Hansjörg Felder
CEOs Felder Group

Ex. 15 at 2 (excerpted); *see also* Ex. 15 at 1–2, 4–7, 29. SawStop's claims for patent infringement arise from or relate to Felder's selling or offering for sale products practicing the patented inventions. Tellingly, Felder admits that its wholly owned subsidiary ASW has sold the accused saws in the U.S. and yet *does not deny that ASW has sold them in Oregon. See* Lux Decl., ¶ 21. Instead, Felder argues that the acts of its subsidiary should not be attributed to it—contradicting other representations in this and the TTAB proceeding—and in direct contradiction to the Complaint's allegations that Felder "actively induce[s] infringement" and "encourages distributors [e.g., ASW] and retailers to sell the Accused Products . . . in the United States." ECF No. 1, ¶¶ 29, 31, 39, 41, 49, 51.

The "court must resolve all factual disputes in [SawStop's] favor" at this stage, *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1347–48 (Fed. Cir. 2016), and find that SawStop has adequately pleaded personal jurisdiction over Felder. This is the case both under the prima facie standard followed by the Federal Circuit and under the plausibility pleading standard advanced by Felder.

Alternatively, because Felder has not claimed that it is subject to personal jurisdiction in a different forum where SawStop could have brought suit, the Court may find that SawStop has satisfied the prima facie showing of minimum contacts with the U.S. as a whole such that exercise of jurisdiction under Rule 4(k)(2) is proper.

### 1. Felder Relies on Non-Controlling Legal Authorities and an Incomplete Recitation of the Governing Standards

Before evaluating SawStop's jurisdictional pleading, a couple threshold issues in the pleading standards recited by Felder must be addressed.

*First*, Felder applies an improperly heightened plausibility standard that the Federal Circuit has not adopted for jurisdictional pleadings. Felder acknowledges that Federal Circuit law governs personal jurisdiction but cites no Federal Circuit decision for its assertion that the *Twombly*/*Iqbal* plausibility standard applies to Rule 12(b)(2) motions.[5] The cases cited by Felder in which courts found a plaintiff failed to sufficiently plead minimum contacts are also distinguishable, and none

---

[5] Some courts have applied plausibility pleading to personal jurisdiction, as in the decisions Felder cites, but other courts have expressed doubt that this is proper. *Clark v. Podesta*, No. 1:15-CV-00008-ELJ-CWD, 2015 WL 5721796, at *4 n.11 (D. Idaho Sept. 14, 2015) ("[T]he standards set forth in *Twombly*/*Iqbal* are not the proper standards the Court relies upon to determine personal jurisdiction."), *report and recommendation adopted*, No. 1:15-CV-0008-EJL-CWD, 2015 WL 5722726 (D. Idaho Sept. 29, 2015); *Tripoli Mgmt., LLC v. Waste Connections of Kansas, Inc.*, No. 09CV01767-CMA-KLM, 2010 WL 845927, at *5 n.9 (D. Colo. Mar. 9, 2010) ("The Supreme Court has not explicitly addressed this issue and this Court is wary of expanding the *Iqbal*/*Twombly* standard to motions filed under 12(b)(2).").

are controlling law here.[6] Instead, controlling Federal Circuit law requires only that "where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction" and SawStop knows of no case

---

[6] *See Hackett v. Red Guahan Bus*, No. CV 16-00066 ACK-RLP, 2016 WL 1445212, at *2 (D. Haw. Mar. 22, 2016), *report and recommendation adopted*, No. CV 16-00066 ACK-RLP, 2016 WL 1435662 (D. Haw. Apr. 11, 2016) (ADA case holding the plaintiff failed to plead sufficient facts in his Amended Complaint to satisfy the standard for minimum contacts where he stated only that the defendant bus company "owns a commercial business worldwide" and did not allege that the defendant "operates or otherwise has any presence in Hawaii or that Plaintiff was discriminated against by Defendant in Hawaii"). In contrast, SawStop alleges that Felder has infringed the Asserted Patents, including "inducing direct infringement by at least one subsidiary" and that the infringing saws have been offered for sale in the District of Oregon. ECF No. 1, ¶¶ 2, 6. Felder admits that its subsidiary sells the saws that SawStop accuses of infringing in the U.S. and does not deny they have been sold in Oregon. Lux Decl., ¶ 21. SawStop also alleges that Felder has used targeted brochures and an interactive website to advertise the infringing saws in Oregon. ECF No. 1, ¶¶ 9–10. *See also Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 796–800 (D. Md. 2011) (antitrust case applying preponderance of the evidence standard instead of the prima facie standard and applying Maryland's "more restrictive" agency test, holding plaintiffs' allegations regarding control exerted by foreign parent company over US subsidiary were insufficient for purposes of imputing minimum contacts to the foreign parent company). *Haley Paint* applies a Maryland agency test for purposes of attributing the actions or contacts of a subsidiary corporation to the foreign parent corporation that is more restrictive than the test applied by the Federal Circuit, which instead requires only a showing that "the defendant exercises control over the activities of the third-party" (agency theory) or that "[t]he named defendant operated as the alter ego of the [related] company." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015).

Felder's other cited cases are distinguishable either because they led to a different outcome than Felder seeks here—*see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1082 (10th Cir. 2008) (copyright case *reversing dismissal* by the district court on personal jurisdiction issue)—or because the court did not discuss plausibility pleading standards in the context of jurisdictional pleading—*see Sheets v. Admin. Comm. of Northrop Grumman Space & Mission Sys. Corp. Salaried Pension Plan*, No. 2:22-CV-07607-MEMF (PDx), 2023 WL 2761118, at *4 (C.D. Cal. Mar. 31, 2023) (ERISA case holding plaintiff failed to meet Rule 8 pleading standards for purposes of personal jurisdiction, but discussing plausibility pleading standards in the context of default judgment issue)—or because the plaintiffs failed to address personal jurisdiction altogether—*see Martinez v. Agoda Co. Pte. Ltd.*, No. 3:20-CV-01289-JAH-MSB, 2023 WL 2254550, at *1, *3 (S.D. Cal. Feb. 27, 2023) (granting motion to dismiss for lack of personal jurisdiction over Booking Holdings defendant where plaintiffs failed to address the personal jurisdiction issue altogether, arguing instead that it was a moot issue).

changing that standard. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). This is because "[i]n the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id*. (citations omitted). The prima facie showing applies even after jurisdictional discovery when jurisdictional facts remain in dispute, unless the Court conducts an evidentiary hearing. *See Polar Electro*, 829 F.3d at 1347–50 (applying the prima facie standard to vacate dismissal of claims against a foreign manufacturer that sold and delivered its product to a distributor outside the U.S. for resale in the U.S.).

*Second*, although Felder correctly articulates the Federal Circuit's three-prong test for specific jurisdiction, its summation as to the burden of proof is incomplete. Although a plaintiff has the burden to establish that "the defendant 'purposefully directed' its activities at residents of the forum" and that "the claim 'arises out of or relates to' the defendant's activities with the forum," it is *Defendant's burden* to make "a compelling case" that jurisdiction would be unreasonable. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–77 (1985). Compelling cases are "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

Felder does not explain why jurisdiction would otherwise be unreasonable if the Court finds that SawStop has established sufficient minimum contacts, and Felder would have difficulty if it did address this factor. SawStop has a substantial interest in obtaining effective and convenient

relief for infringement of its patents, and Oregon has an interest in adjudicating the rights of its citizens, including SawStop, an Oregon limited liability company.

       2.       **SawStop Adequately Pleads**
                **Personal Jurisdiction Based on "Minimum Contacts"**
                <u>**with the Forum Even Under the Plausibility Standard**</u>

SawStop has also adequately pleaded personal jurisdiction even if the Court applies the *Twombly/Iqbal* pleading standard, because it has pleaded sufficient factual content to allow the Court to draw a "reasonable inference" based on more than a "sheer possibility" that Felder has minimum contacts with Oregon. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Felder does not dispute that SawStop's patent infringement claims arise out of or relate to the activities cited in the Complaint, nor does it make "a compelling case," or any case for that matter, as to why asserting personal jurisdiction in an Oregon court would be unreasonable. Thus, Felder only appears to dispute the first prong of the specific jurisdiction test followed by the Federal Circuit, arguing that SawStop has not adequately pleaded that Felder purposefully directed activities to Oregon.

In arguing that SawStop has failed to plead that Felder purposefully directed activities to Oregon, Felder raises a number of fact issues disputed by SawStop, but many of these are controverted by other sworn statements made by Felder or its agents, and at this early stage, "the court must resolve all factual disputes in the plaintiff's favor." *Polar Electro*, 829 F.3d at 1347–48.

*First*, Felder disputes that it has sold the infringing saws in Oregon. ECF No. 8 at 17–18 (asserting that "Felder KG does not sell the Accused Products anywhere in the United States" and only ASW sells them in the U.S.). But on May 19, 2021, Felder represented in interrogatory responses served in a related TTAB proceeding that Felder "has sold systems comprising saws in the U.S. under the mark PCS" (Ex. 14, Def.'s Resp. to Pl.'s Interrog. Nos. 28–29), i.e., the

Preventive Contact System that SawStop alleges infringes its patent rights (ECF No. 1, ¶¶ 8, 11). And when asked about the "geographic regions in the United States" in which Felder used or intended to use the PCS mark, Felder reiterated in a later response that "it intends to advertise/sell, and advertises/sells, throughout the U.S. . . [.]" Ex. 16, Def.'s Resp. to Pl.'s Interrog. No. 43.

Relatedly, the position Felder now takes that it does not sell the infringing saws in the U.S. is based on an apparent argument that ASW (and not Felder) sells the infringing saws in the U.S., and the acts of ASW cannot be imputed to Felder. ECF No. 8 at 18. But Felder provided no details or documents that could establish where or to whom the first sale of infringing saws made in Austria allegedly occurs, much less who under patent law is responsible for infringing acts such as offering to sell, selling, or importing into the U.S. *See* 35 U.S.C. § 271(a).[7] In any event, the cases cited by Felder applying the Federal Circuit's test for whether contacts by a subsidiary can be imputed to a parent are distinguishable. In *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373 (Fed. Cir. 2015), the Federal Circuit affirmed dismissal for lack of personal jurisdiction after

---

[7] Felder's assertion that "Felder KG's only sales of the Accused Products take place in Europe" (ECF No. 8 at 18 (citing Lux Decl., ¶ 21)) is threadbare. Felder offered nothing to support or corroborate this assertion—which is more a legal conclusion than factual statement under the patent law applicable to determining where a sale occurred. Felder provided no alleged factual details or documentary evidence demonstrating any of the factors discussed by the Federal Circuit when determining where a sale or offer to sell is made for purposes of patent law. Yet, this is a highly fact-intensive inquiry, "and it is not even settled whether a sale can have more than one location." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015) ("The standards for determining where a sale may be said to occur do not pinpoint a single, universally applicable fact that determines the answer[.]"); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378 (Fed. Cir. 2016) (facts relevant to where a sale occurred include the locale of the "final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract"); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1365 (Fed. Cir. 2019) (affirming verdict that Chinese defendant did not import the accused product into the U.S. or sell or offer for sale that product within the U.S. based on evidence showing the product was sold to a U.S. affiliate F.O.B. Hong Kong, the affiliate was registered as the importer and managed clearing of shipments through U.S. customs, reimbursed the Chinese defendant for freight charges, and invoices stated that the U.S. affiliate assumed all liability for shipments from China to the U.S.).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    17

jurisdictional discovery, *id.* at 1378, as to a foreign defendant where the plaintiff did not show *any attempt* by the foreign defendant to purposefully direct or control the activities of dealers in North Carolina (i.e., no control for purposes of agency theory) and provided *no evidence* of any relationship between foreign defendant and the Kia dealers in the forum state that could establish an alter ego relationship. *Id.* at 1379–80.

Here, the connections between Felder and its U.S. subsidiary raise more than the "sheer possibility" that Felder exerts control over its subsidiary. Felder's declaration in support of its motion admits that the declarant, Arthur Lux, is both Regional Manager of Sales at Felder KG (Lux Decl., ¶ 1) and President of ASW (*id.*, ¶ 13). The U.S. version of the interactive website cited in the Complaint that features the infringing saws (ECF No. 1, ¶ 10 (citing https://www.feldergroup.com/en-us) is part of the "Felder Group," and Ruan du Toit (CEO of ASW) has confirmed that felder-group.com is the Felder KG website. Ex. 1, 52:21–53:10. When asked in the TTAB about "all websites displaying the Challenged Mark," i.e., PCS, which is used on the saws that infringe SawStop's patents, "that are owned, operated, or controlled by Applicant, and all Persons who were or are, responsible for or participating in, the creation and development of each website," Felder's response identified one website and one person—the "English language website: https://www.felder-group.com/en-us, and Applicant [Felder] identifies Mr. Ruan Du [T]oit, CEO of Felder Group USA." Ex. 16, Def.'s Resp. to Pl.'s Interrog. No. 39. The shared nature of the website is also plain from the following evidence:

(i)     the website domain (felder-group.com) is registered to an Austrian mailing address (Ex. 26);

(ii)    the "Privacy Statement" link on the U.S. page directs to a page that refers visitors to Felder KG under "Controller and contact details," (Exs. 17, 18);

(iii)   the URL feldergroupusa.com redirects to the Felder KG site (Kivatinetz Decl., ¶ 3);

(iv)    the "Job portal" link on the U.S. page (https://www.felder-group.com/en-us) directs to https://felder-group.jobs/en, which has a 2024 copyright notice for "FELDER KG" (Ex. 19);

(v)    the Job vacancies page includes listings in Tirol, Austria where Felder is based (Exs. 19, 20); and

(vi)    the Jobs portal page links via "Learning Company" to content that promotes what appears to be a centralized training program for all Felder Group employees (Ex. 21 (featuring a testimonial promoting the "inter-divisional" training program ("Felder Academy") for "every employee")).

Other courts have rejected similar arguments to the one Felder makes here where the connections between a foreign parent company and subsidiary included overlapping management and a shared website. *See, e.g.*, *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2-08-cv-098 (TJW), 2009 WL 361069, *1–2 (E.D. Tex. Feb. 10, 2009) (rejecting argument by foreign corporation that it was only "a far removed parent company" to the U.S. subsidiary where the parent company and the subsidiary had overlapping management and a shared website and the parent company enjoyed revenues from sales of the accused products).

The other case relied on by Felder, *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183 (Fed. Cir. 2019) (nonprecedential), involved an affirmed dismissal where the plaintiff failed to plead facts showing the parent corporation had sufficient control over the subsidiary to support jurisdiction and a finding that the plaintiff "failed to allege any conduct by defendant L'Oréal S.A. that was 'purposefully' aimed at the forum state of California such that specific jurisdiction would apply." *Id.* at 190. But here, that is exactly what the allegations of induced patent infringement in the Complaint do—SawStop has adequately pleaded that Felder is liable for sales by ASW, a wholly owned subsidiary and exclusive "distributor" of Felder's products in the U.S. that Felder induces to sell the infringing saws throughout the U.S., thereby infringing SawStop's patents. ECF No. 1, ¶¶ 2, 29, 31, 39, 41, 49, 51; *see also* Ex. 1, 45:10–46:11 (testifying to the relationship of the companies, noting ASW is the "exclusive distributor of products in the United States" for its parent

company, Felder KG). Felder also admits that ASW sells power equipment with the "Preventative Contact System" (i.e., the infringing saws) in the U.S. and *does not deny that ASW sells and offers to sell infringing saws in Oregon*. Lux Decl., ¶ 21. This is telling given Felder's other specifically tailored denials regarding Oregon. *Id*., ¶¶ 5–12.

Further, Felder's conclusory statements that it has no control over corporate policies or daily operations, does not mean it has no control over ASW's overall business strategy, marketing, or R&D—or importantly, the sale of infringing saws. These statements have also been contradicted by sworn statements and discovery provided in the TTAB proceeding involving Felder.[8] And the fact that Felder's Regional Manager of Sales is also President of ASW raises more than a "sheer possibility" that Felder had knowledge of ASW's sales activities in the U.S., including Oregon. Indeed, a reasonable inference when the same person is Felder's Regional Manager of Sales and President of Felder USA (ASW) is that Felder not only knew of but also purposefully directed infringing sales activities throughout the U.S. That combined with Felder's failure to deny the offer or sale by ASW of infringing saws in Oregon is sufficient to make a prima facie showing that

---

[8] Felder offers several statements in its supporting declaration that it "does not exercise authority over ASW's [corporate] policies," maintains a separate accounting system, that "ASW exercises authority over its daily operations," that the two companies "do not share offices," "do not pay wages to each other's employees," and that "ASW has never been authorized or appointed to accept service of process of behalf of Felder KG." Lux Decl., ¶¶ 15–20. But Felder's apparent attempts to establish separateness between itself and ASW are undermined by sworn statements from ASW's CEO, Ruan du Toit, and discovery provided in the related TTAB proceeding. *See* Ex. 1, 16:4–17:7 (testifying his assistant is employed by Felder KG and is ASW's "direct contact at the factory for anything related to Felder USA"); *id*. at 46:6–46:11 (testifying ASW is the "exclusive distributor of products in the United States" for its parent company, Felder KG); *id*. at 133:9–133:24 (testifying Felder KG prepared a press release on behalf of its U.S. subsidiary, ASW, for the PCS system); *id*. at 141:6–141:12 (testifying ASW "work[s] within Felder KG's system" when preparing "quotes, order confirmations, things like that"); *id*. at 175:14–176:11 (testifying that Felder KG implemented and maintains Facebook promotional efforts for its U.S. subsidiary); Ex. 14, Def.'s Resp. to Pl.'s Interrog. No. 7. (identifying only Ruan du Toit, CEO of Felder Group USA (ASW), as the person involved in preparing written discovery responses provided by Felder KG in the TTAB proceeding).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS                    20

Felder purposefully directed its activities (sales and offers to sell through its subsidiary) to Oregon residents, which gives rise to at least a claim for indirect patent infringement under 35 U.S.C. § 271(b).

*Second*, Felder contends that SawStop's allegations about brochures and other advertising materials do not alone establish personal jurisdiction. But those materials are evidence that support personal jurisdiction. And while Felder focuses on the Fine Woodworking magazine advertising examples cited in the Complaint, it ignores the allegation that "Felder has sent advertising brochures to addresses located within the District of Oregon offering to sell the Accused Products." ECF No. 1, ¶ 9. Those brochures show that Felder directly targeted Oregon with its promotion and advertising of infringing saws, even if the ads that ran in Fine Woodworking magazine were nationally targeted. *See* Ex. 15 at 1–2, 4–7, 29.

*Third*, Felder disputes that the website cited in the Complaint (http://www.felder-group.com/en-us) demonstrates purposeful direction to Oregon. While true that a nationally available website may be insufficient on its own to establish sufficient contacts, that is not the only contact SawStop has alleged here. Felder calls attention to the contact information provided for "Felder Group USA" (ASW) on the English version of the Felder Group website. ECF No. 8 at 19–20. But Felder's insinuation that the website cited in the Complaint has no relation to Felder has been contradicted by its representations in the related TTAB proceedings. Ex. 14, Def.'s Resp. to Pl.'s Interrog. No. 8 (citing the same website, noting "Applicant's [Felder KG] goods are advertised at, *e.g.*, https://www.felder-group.com/en-us/pcs."). Felder does not mention that feldergroupusa.com redirects to https://www.felder-group.com/en-us, the pages on this site interlink with Felder KG content, or that the contact information provided varies depending on

what country site visitors select on the homepage. Decl. Kivatinetz, ¶¶ 3–4. Or, importantly, that

the website is owned by Felder. Exs. 17–21, 26.

### 3. Jurisdiction Is Also Proper Under the Federal Long-Arm Statute, Fed. R. Civ. P. 4(k)(2)

Felder does not claim that there is any other suitable forum where SawStop could have

brought this suit and thus appears to be arguing that there is no personal jurisdiction over it

anywhere in the U.S. That cannot be correct. Felder is (at least) selling its products into the U.S.

through its subsidiary, and Felder asserted in the TTAB that it has sold the infringing saws at issue

into the U.S. itself. Ex. 14, Def.'s Resp. to Pl.'s Interrog. Nos. 28–29. Felder is inducing patent

infringement in the U.S. and must be held accountable in a court in the U.S. Even if the Court does

not find sufficient "minimum contacts" between Felder and Oregon, it should find that jurisdiction

is proper under Fed. R. Civ. P. 4(k)(2).

> Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes*, 563 F.3d at 1293–94. "The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* at 1295. "*Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process.*" *Id.* at 1296.

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda*., 890 F.3d 995, 999 (Fed. Cir. 2018) (emphasis

added) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285,

1293–96 (Fed. Cir. 2009)). Additionally, SawStop did not need to plead jurisdiction under Rule

4(k)(2) for that rule to be considered. *Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1296 (Fed. Cir.

2012) ("[O]ur precedent holds that Rule 4(k)(2) can be considered even when the plaintiff has

affirmatively pled a different basis for personal jurisdiction.").

As to the first factor, SawStop's patent infringement claims arise under federal law. ECF No. 1, ¶ 5 (citing 35 U.S.C. § 271 *et seq*.).

As to the second factor, Felder has not claimed it is subject to jurisdiction in any state's courts of general jurisdiction. While SawStop contends that Felder is subject to personal jurisdiction in the state of Oregon based on its specific contacts with this jurisdiction, if the Court finds it is not, then personal jurisdiction is proper under Rule 4(k)(2) because Felder has not identified any state court where it would be subject to jurisdiction. Defendant bears the burden to "designate[] a suitable forum in which the plaintiff could have brought suit," and if "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (citation omitted).[9] Rather than identify another forum, Felder appears to argue that it is not subject to the jurisdiction of *any* state's courts. It claims to have no branches, officers, directors, employees, offices, telephone listings, bank accounts, real estate, manufacturing plants, or registered agents anywhere in the U.S. Lux Decl., ¶¶ 4–6, 8–12. Felder also argues that its subsidiary is entirely independent, despite the facts described above. Thus, under Felder's alleged set of (disputed) facts, it is not clear that it would be subject to personal jurisdiction in any other state's courts of general jurisdiction.

As to the third factor, the exercise of jurisdiction satisfies due process. While Felder argues that its activities are not targeted to the state of Oregon, Felder has represented in interrogatory responses, dated May 19, 2021, in the TTAB proceeding that it "has sold systems comprising saws

---

[9] Felder cannot now or in subsequent briefing simply consent to a state where it would have agreed to personal jurisdiction—jurisdiction must have been proper at the time the suit was filed. *See Merial*, 681 F.3d at 1294–95 (a defendant may not "suggest[] an alternative forum with no basis for personal jurisdiction but for its consent").

in the U.S. under the mark PCS" (i.e., the Preventive Contact System used in the infringing saws). *See supra*, at 6; *see also* Ex. 16, Def.'s Resp. to Pl.'s Interrog. No. 43 (Felder "intends to advertise/sell, and advertises/sells, throughout the U.S. . . ."). The recently crafted Lux declaration Felder submitted in support of its motion may contradict that statement (Lux Decl., ¶ 21), but that is a question of fact, and under the prima facie standard applicable when the district court determines personal jurisdiction without an evidentiary hearing, "the court must resolve all factual disputes in the plaintiff's favor." *Polar Electro*, 829 F.3d at 1347–48.

It does not help Felder's case for purposes of Rule 4(k)(2) that Felder asserts that its "only sales of the Accused Products take place in Europe" to its subsidiary ASW who sells the infringing saws in the U.S. ECF No. 8 at 18; Lux Decl., ¶ 21. The Federal Circuit has found that it is enough that a foreign defendant knows the accused products will be sold in the forum to find purposeful availment even where the transfer of products between the foreign defendant and a related U.S. entity occur outside the U.S. *Cf. Polar Electro*, 829 F.3d at 1350 (foreign defendant "who physically fulfilled the orders, packaged the products, and prepared the shipments in Finland" to Delaware retailers purposefully availed itself of jurisdiction in Delaware). Under Rule 4(k)(2), the pertinent forum is the U.S., and Felder's declaration shows its awareness that the infringing saws it sold to ASW (allegedly in Europe) would be sold by ASW in the U.S. Lux Decl., ¶ 21 (admitting that its wholly owned subsidiary, ASW, "sells, in the United States, power equipment with the 'Preventive Contact System'"); *see also* Ex. 14, Def.'s Resp. to Pl.'s Interrog. No. 8 (representing that "Applicant [Felder]'s goods are sold directly by Applicant via Applicant's subsidiaries to its customers . . . [.]"). And where the same person is both Regional Sales Manager of Felder KG and President of ASW (Lux Decl., ¶¶ 1, 13), a fair inference is that Felder intended and purposefully directed sales and offers to sell the infringing saws throughout the U.S.

But sales to ASW of infringing saws intended for the U.S. market (allegedly occurring in Europe) are not the only relevant contacts Felder has with the U.S. The "Felder Group" has also recently promoted its presence at the International Woodworking Fair ("IWF"), to be held in Atlanta. Ex. 22 (describing an Accused Product and inviting readers to apply for free tickets to the event; nowhere mentioning "Felder Group USA" or "ASW"). The link at the bottom of the article to get free tickets from Felder leads to a "Contact form" that provides a dropdown list of states including Oregon for the address to which tickets would be sent and requires the user to confirm they have read the privacy policy of the "FELDER GROUP" (Ex. 23) and that in turn links to a "FELDER KG" page titled "FELDER Group's Privacy Statement" (Ex. 24; *see also* Kivatinetz Decl. ¶¶ 26–28). Although Felder challenges the advertisements and website described in the Complaint as targeted to the U.S. as a whole (ECF No. 8 at 18–19), the previous examples do at least give rise to jurisdiction under Rule 4(k)(2) as activities purposefully directed to the U.S. *See, e.g.*, *M-I Drilling Fluids*, 890 F.3d at 1001 (Fed. Cir. 2018) (citing other examples giving rise to purposeful direction and "arising under" prongs, including displaying accused products at a U.S. tradeshow and making accused products available for sale in the U.S. through an established distribution chain). Additionally, confidential documents Felder has produced in the TTAB proceeding further suggest Felder KG has more to do with U.S. sales than set out in the Lux Declaration.

It is Felder's burden to make a "compelling case" for why exercising jurisdiction would not be "reasonable and fair" pursuant to Rule 4(k)(2). SawStop notes, however, that the Federal Circuit has found travel burdens alone insufficient and has further recognized that a patent plaintiff has "a paramount interest in obtaining convenient and effective relief in a U.S. court," and "[t]he United States has a 'substantial interest' in enforcing federal patent laws." *Id.* at 1002–03 (further

noting it is a "rare case[]" where "fair play and substantial justice defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant").

### 4. The Court Should Grant Jurisdictional Discovery if It Finds the Record Is Not Developed Enough to Determine Personal Jurisdiction

If the Court finds that the record is insufficiently developed to determine personal jurisdiction, SawStop asks that the Court allow for jurisdictional discovery.

The law of the regional circuit applies to whether jurisdictional discovery should be permitted and can be requested in opposition to a motion to dismiss. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235–36 (Fed. Cir. 2010). In *Nuance*, the Federal Circuit applied Ninth Circuit law to find that the incomplete record supported additional discovery to determine personal jurisdiction over a foreign corporation. *Id*. The request there was made in an opposition to a motion to dismiss and was affirmed as not being based on a "mere hunch" but instead on the foreign corporation's website and a trade magazine article suggesting control over its subsidiaries. *Id*.

In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

That Felder is subject to this Court's jurisdiction, here, is based on more than a "mere hunch" and is supported by evidence in the record controverting Felder's representations about its relationship with ASW, its failure to deny sales of infringing saws to Oregon residents, and evidence of sending targeted brochure advertising to Oregon recipients featuring an infringing saw. Discovery could reveal yet more evidence of Felder's contacts with Oregon, including, e.g., actual sales to Oregon residents, quotes for infringing saws provided to Oregon residents, and other

targeted advertising to Oregon residents. Thus, in the event the Court finds that the record is insufficient to show minimum contacts with Oregon and declines to exercise jurisdiction under Rule 4(k)(2), SawStop respectfully asks the Court to exercise its "broad discretion" to permit jurisdictional discovery. *Laub*, 342 F.3d at 1093.

### C.    The Complaint Adequately Pleads Patent Infringement Claims

#### 1.    SawStop Adequately Pleads Direct Infringement

Felder notably does not dispute that sales were made of the infringing saws—i.e., saws with the Preventive Contact System. Nor can Felder claim that no sales were made in the U.S.: Felder has repeatedly admitted in public sworn statements at the TTAB that such sales were made. In fact, Felder has stated in the TTAB proceeding that Felder itself made sales in the U.S. Ex. 14, Def.'s Resp. to Pl.'s Interrog. Nos. 28–29. Felder may be attempting to contradict this statement in the Lux Declaration, but that is a question of fact that need not be resolved at the pleadings phase.

Given the straightforward mechanical technology here, the level of detail required in the pleading is low. The Federal Circuit has found that in cases with such mechanical technologies, it is sufficient to identify the accused products, attach the asserted patents, and state that at least one claim is infringed. *See, e.g.*, *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) ("The complaint specifically identified the three accused products . . . and alleged that the accused products meet 'each and every element of at least one claim of [the asserted patents], either literally or equivalently.' . . . These disclosures and allegations are enough to provide [defendant] fair notice of infringement of the asserted patents."). Here, SawStop's Complaint meets or exceeds that low requirement. SawStop identifies the infringing saws and identifies the specific feature that makes them infringe: Felder's so-called Preventive Contact System. And

SawStop not only alleges that Felder infringes "at least one claim," as the Federal Circuit required, but goes further to identify specific claims that are infringed for each asserted patent.

SawStop "is not required to plead infringement on an element-by-element basis," as is shown by Felder's own cases. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Felder recites a number of elements that it alleges SawStop has not shown specific facts to support, but the idea of a requirement to show facts for each and every element of the asserted claims "is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Id*. (citing *Twombly*, 550 U.S. at 556). Indeed, Felder's recitation of specific language in claims identified in the Complaint illustrates that Felder is on notice of exactly what SawStop is alleging Felder has done to infringe its patents. That is all that is required at this stage.

Indeed, the deficiency that the Federal Circuit identified in the section of *Bot M8*, which Felder cites, was not that the pleading did not make enough factual allegations. Instead, the plaintiff in *Bot M8* asserted several patents, and Felder relies on a section where the pleading in that case had pleaded facts that were inconsistent, and thus contained "too much rather than too little, to the point that Bot M8 has essentially pleaded itself out of court." *Bot M8*, 4 F.4th at 1354.

Felder's argument that SawStop is required to recite the claim language in the body of the Complaint is both unsupported by case law and ignores Rule 10, which states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## 2.    <u>SawStop Adequately Pleads Induced Infringement</u>

SawStop also properly pleads induced infringement. SawStop specifically pleads that Felder has had knowledge of each patent since before the suit was filed. ECF No. 1, ¶¶ 27, 37, and 47. SawStop pleads that Felder has specifically advertised the infringing feature of its saws to consumers in the U.S. *Id*., ¶¶ 8, 12–13. SawStop pleads that Felder knew that use of the infringing

saws would directly infringe and, despite that, encouraged its distributors and retailers to sell the infringing saws and to educate its customers how to use them. *Id*., ¶¶ 28–30, 38–40, 49–50.

"[T]he *Iqbal / Twombly* standard unquestionably applies to [a plaintiff's] allegations of induced . . . infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citing *Superior Indus., LLC v. Thor Glob. Enters., Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012). "[T]he plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 556).

SawStop's allegations meet that plausibility standard, and Felder has identified no case dismissing a Complaint under similar facts. In *Memory Integrity,* the plaintiff alleged that infringement occurred when users purchased two or more processors and arranged them in parallel on a server board. *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185 (D. Or. 2015). But as the court stated, "Memory Integrity does not, however, assert that Intel specifically instructs or recommends that customers combine Intel's products." *Id.* at 1197. Here, SawStop accuses a specific feature that is embodied in Felder's "Preventive Contact System," not something that requires the purchase of multiple separate products that must be combined to infringe.

Felder's reliance on *Superior Industries* is similarly misplaced because there, the plaintiffs baldly pleaded that the defendant was "actively inducing others to infringe . . . by its unauthorized making, using, offering to sell, selling and/or importing" the accused products without reciting any supporting facts. 700 F.3d 1287, 1290–91 (Fed. Cir. 2012). In contrast, SawStop pleads the facts laid out above in support of its induced infringement claim.

Felder also cites non-controlling case law from other districts that are similarly inapposite. The *Sonos* decision from Northern District of California turned on the fact that the plaintiff's allegation of knowledge was based on providing the defendant with "a massive, pre-filing copy of the complaint one day prior to filing it." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 648 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022). Induced infringement is not discussed at all in *Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC*, No. 19-cv-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021).

It is also noteworthy that while Felder challenges the sufficiency of SawStop's pleading, it does not deny in its Motion or the Lux Declaration that Felder knew about the three Asserted Patents. Nor could it, because SawStop produced to Felder in the TTAB proceeding a copy of its Professional Cabinet Saw manual in October 2020 that specifically lists two of the three patents in suit. Ex. 25. Indeed, going far beyond plausibility required for pleading, Felder itself has provided strong evidence of induced patent infringement where the Lux Declaration establishes that the same person wears one hat as Regional Manager of Sales at Felder KG—the company that sells infringing saws to ASW—and a second hat as President of ASW—the company that sells infringing saws in the U.S. to thereby directly infringe SawStop's patents. Lux Decl. ¶¶ 1, 13, 21.

In sum, SawStop's complaint "plead[s] facts plausibly showing that the accused infringer 'specifically intended [Felder USA] to infringe [the patents in suit] and knew that . . . [Felder USA]'s acts constituted infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018) (quoting *Bill of Lading*, 681 F.3d at 1339). And rather than undermine plausibility, evidence provided by Felder in this Court and the TTAB provides strong support for SawStop's allegations.

### 3.    SawStop Adequately Pleads Willful Infringement

Felder's case support for dismissing SawStop's claim of willful infringement similarly fails. In general, "the facts bearing on willfulness are likely to be mainly in the possession of the defendant and available to the plaintiff only through discovery. If discovery fails to produce facts that would support a finding of willfulness, the defendant can seek to have the willfulness allegations dismissed on summary judgment." *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, No. CV 23-675-WCB, 2023 WL 7214672, at *10 (D. Del. Nov. 2, 2023). Under controlling Federal Circuit law, pleading willfulness can be accomplished by pleading that the "acts of infringement . . . occurred with full knowledge of [the patent] and have been willful and deliberate." *Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007). SawStop's claim for willful infringement alleges knowledge of the patents in suit and that the infringement was done "in conscious disregard of SawStop Holding's rights." ECF No. 1, ¶¶ 33, 43, 53. Thus, SawStop's claim of willful infringement should not be dismissed.

Felder's argument for dismissal relies on speculation that the pleading standard for willfulness has changed since the Supreme Court addressed the standard for proving willful infringement in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). But "[i]n the wake of *Halo*, the contours of what kind of conduct warrants imposing enhanced damages are somewhat unclear, particularly under the Rule 12(b)(6) standard" *Sec. First Innovations, LLC v. Google LLC*, No. 2:23-CV-97, 2023 WL 7726389, at *6 (E.D. Va. Nov. 15, 2023) (citing *Sonos*, 591 F. Supp. 3d at 643). SawStop knows of no appellate authority that has changed that pleading standard.

Even if the pleading standard changed after *Halo*, Felder's only argument misreads *Sonos*, a non-controlling case. In that case, the court gave examples of what it thought should be pleaded after *Halo*, which included a prior lawsuit, a licensor-licensee relationship, or a notice letter. *Sonos*

itself states that "there can be circumstances where willful infringement is properly alleged despite the absence of a notice letter." *Sonos*, 591 F. Supp. 3d at 644. *Sonos* does not require pleading that a pre-notice letter be sent. *Id.*

Thus, SawStop has pleaded the requisite knowledge and intent, as discussed above, and its claim of willfulness should not be dismissed.

### 4.    SawStop Adequately Pleads Its Claims Under 35 U.S.C. § 287

SawStop has met the pleading requirements of 35 U.S.C. § 287(a) because, as the Federal Circuit has held, "pleading that the 'infringements have been willful and with full knowledge of the [patents]'" is sufficient to meet the pleading requirement under 35 U.S.C. § 287(a). *Sentry Prot. Prod., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (citing *Dunlap v. Schofield*, 152 U.S. 244, 249 (1894)). SawStop did that, and thus met those requirements. Felder's unreported, non-controlling cases do not appear to even consider the Federal Circuit's holding in *Sentry Protection* and should not be relied on to contravene that controlling law.

## IV.    CONCLUSION

SawStop has adequately served Felder by serving its general agents in the U.S., as allowed by Rule 4(h)(1)(B) and by serving Felder in a way reasonably calculated to apprise Felder of the existence and pendency of the action, as allowed by Oregon state law. But should the Court find that service insufficient, SawStop asks that the Court allow service under Rule 4(f)(3).

SawStop has made the necessary prima facie showing of personal jurisdiction. In the alternative, if the Court credits Felder's position that it does not have the required minimum contacts with this jurisdiction, Felder's arguments are effectively that Felder lacks minimum contacts with any U.S. district, and thus this Court may exercise jurisdiction over Felder under Rule 4(k)(2). In the further alternative, jurisdictional discovery rather than dismissal would be appropriate if the Court is not satisfied that personal jurisdiction has been established.

Finally, under the controlling standards, SawStop has properly pleaded its claims for direct, induced, and willful infringement, as well as for damages under 35 U.S.C. § 287, and the Court should not dismiss SawStop's claims under Rule 12(b)(6). In the alternative, any dismissal should be without prejudice and with leave to amend. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("[R]equests for leave [to amend] should be granted with extreme liberality.") (citation and internal quotation marks omitted).

Respectfully submitted,

June 26, 2024                    By: s/Ryan L. Frei
                                     Ryan L. Frei, OSB #192660
                                     ryan.frei@klarquist.com
                                     Scott E. Davis OSB #022883
                                     scott.davis@klarquist.com
                                     KLARQUIST SPARKMAN, LLP
                                     121 S.W. Salmon Street, Suite 1600
                                     Portland, Oregon 97204
                                     Telephone: 503-595-5300

                                     *Counsel for Plaintiff*
                                     *SAWSTOP HOLDING LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,853 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


June 26, 2024                              By: <u>s/ Ryan L. Frei</u>
                                               Ryan L. Frei, OSB #192660
                                               ryan.frei@klarquist.com